**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **VANESSA ROSE QUINTERO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-00251-FM** |
| | § | |
| **STATE OF TEXAS-HEALTH AND** | § | |
| **HUMAN SERVICES COMMISSION,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

Before the Court is "Defendant Texas Health and Human Services Commission's Motion for Summary Judgment" (ECF No. 30), "Plaintiff's Objections to Defendant's Summary Judgment Evidence" (ECF No. 32), "Plaintiff's Response to Defendant Texas Health and Human Services Commission's Motion for Summary Judgment" (ECF No. 41), "Defendant's Reply in Support of Motion for Summary Judgment" (ECF No. 35), "Plaintiff's Reply to Defendant's Response to Plaintiff's Objections to Defendant's Summary Judgment Evidence" (ECF No. 37), and "Plaintiff's Sur-Reply to Defendant's Reply in Support of Motion for Summary Judgment" (ECF No. 43).

On July 1, 2022, United States District Judge Frank Montalvo referred the above-captioned matter to United States Magistrate Judge Robert Castañeda for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 39.) For the reasons set forth below, the Court recommends that Defendant's Motion for Summary Judgment should be **GRANTED**.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant Texas Health and Human Services Commission ("Defendant" or "HHSC") operates the El Paso Psychiatric Center ("Hospital").  (ECF No. 30:6.)[2]  The Hospital's Pharmacy Department ("Pharmacy") manages medications for Hospital patients.  *See* (*id.* at 7.)   The Pharmacy consists of a Director, a Staff Pharmacist, and three Pharmacy Technicians.  (*Id.*)

In January 2019, HHSC hired Plaintiff Vanessa Quintero ("Plaintiff" or "Quintero") as a Pharmacy Technician.  (*Id.*); (ECF No. 1:2.)  Approximately two to three weeks after Quintero was hired, Quintero informed her supervisor, Pharmacy Director Patty Dominguez ("Dominguez"), that she was pregnant.  (ECF Nos. 1:2; 30:7.)  Quintero states that upon receiving this news, Dominguez "gets upset, gets quiet, and turns away from [Quintero], before stating that there are two other pregnant employees in the department."  (ECF No. 1:2.)  She also states that Dominguez asked Quintero "why [she] did not tell Supervisor Dominguez that she was pregnant during her job interview."  (*Id.*)

On or about January 17, 2019, Dominguez and Dominguez's supervisor Zulema Carrillo ("Carrillo") discussed parental leave with Quintero.  (*Id.* at 3); (ECF No. 30:7–8.)  Around March 2019, the Staff Pharmacist and one of the other Pharmacy Technicians went on parental leave.  (ECF No. 30:8.)   HHSC states that it approved Quintero's request for parental leave.  (*Id.*)  Quintero does not dispute this, but states that as late as April 22, 2019, Dominguez would ask Quintero how much time she would be on maternity leave.  (ECF No. 1:4.)

---

[1] While recounting the factual and procedural background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[2] To the extent that undisputed facts are drawn from the Declaration of Patty Dominguez, the Court will consider them because, as discussed in Section III.A. *infra*, the Court overrules Quintero's objections to that declaration.

Quintero states that after she reported her pregnancy, Dominguez would not allow her to leave for doctor appointments but would allow employees who were not pregnant to do so.  (ECF No. 1:3.)  But HHSC states that it "always allowed Plaintiff to take time for these visits without consequence."  (ECF No. 30:8.)  Quintero also states that Dominguez would change her schedule without notice.  (ECF No. 1:4.)  HHSC states that scheduling changes were necessary to accommodate "[t]he combination of three out of five team members being pregnant, another team member leaving, and the hiring of both a contract and new technician."  (ECF No. 30:8.)

Quintero states that Dominguez "falsely accuse[d] [her] of being inflexible and argumentative" (ECF No. 1:4), while HHSC states that Quintero became "increasingly insubordinate" (ECF No. 30:9).  On or about April 22, 2019, Quintero complained to Dominguez about Dominguez's treatment of her.  (ECF No. 1:4.)  On or about April 25, 2019, HHSC terminated Dominguez's employment.  (*Id.* at 5); (ECF No. 30:11–12.)  Katherine Hunter ("Hunter"), formerly a contract employee of HHSC, filled Quintero's position as Pharmacy Technician.  (ECF No. 30:12.)

On September 30, 2020, Quintero filed her Complaint alleging that HHSC violated Title VII of the Civil Rights Act of 1964 ("Title VII") and Texas Labor Code Chapter 21 ("Chapter 21") by committing sex and pregnancy discrimination and retaliation.  (ECF No. 1:5.)  After receiving leave from the Court, HHSC filed its Answer on November 13, 2020.  (ECF Nos. 5–6.)  On May 20, 2022, HHSC filed the instant Motion for Summary Judgment ("MSJ" or "Motion") (ECF No. 30) and moved to dismiss Quintero's Chapter 21 claims and her Title VII claims for punitive damages ("Motion to Dismiss") (ECF No. 29:1.)  Quintero responded to the Motion to Dismiss (ECF No. 31) and sought leave to exceed the page limit for her response to the MSJ (ECF No. 34).  Quintero also filed objections to HHSC's summary judgment evidence ("Objections").  (ECF No.

32.)  On June 10, 2022, HHSC filed its Reply in Support of its MSJ ("Reply").  (ECF No. 35.)  On June 17, 2022, Quintero filed "Plaintiff's Motion to Strike Defendant's Reply in Support of Defendant's Motion for Summary Judgment, and, Alternatively, Plaintiff's Motion for Leave to File Plaintiff's Sur-Reply."  (ECF No. 36.)  Quintero also filed a "Reply to Defendant's Response to Plaintiff's Objections to Defendant's Summary Judgment Evidence."  (ECF No. 37.)

On July 1, 2022, Judge Montalvo granted HHSC's Motion to Dismiss (ECF No. 38) and referred HHSC's MSJ to the undersigned for a Report and Recommendation (ECF No. 39).  On July 12, 2022, Judge Montalvo granted Quintero's motion for leave to exceed page limit (ECF No. 40) and Quintero's Response to the MSJ was thereafter filed ("Response") (ECF No. 41).  Judge Montalvo denied Quintero's request that the Court strike HHSC's Reply but granted her request to file a Sur-Reply.  (ECF No. 42.)  Quintero's Sur-Reply was thereafter filed ("Sur-Reply").  (ECF No. 43.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material "if proof of its existence might affect the outcome of the case."  *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).  "There exists a 'genuine dispute' about a material fact . . . when the evidence would allow a reasonable jury to return a verdict for the nonmovant."  *Id.*

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant carries that burden, the burden shifts to the nonmovant to show that a genuine issue exists.

*Id.* at 323–25.  The ultimate inquiry is whether the evidence is "so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In ruling on a motion for summary judgment, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).  Courts, however, "refrain from making credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## III. DISCUSSION

### A.  Plaintiff's Objections to Defendant's Summary Judgment Evidence

Before addressing the substance of HHSC's Motion, the Court considers Quintero's Objections to HHSC's proffered summary judgment evidence.  (ECF No. 32.)  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  For summary judgment purposes, "materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence."  *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quotation marks omitted) (citation omitted).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment.

Quintero asks the Court to strike the Declaration of Patricia Dominguez ("Dominguez's Declaration") (ECF No. 30-1) and the documents attached to Dominguez's Declaration, which are labeled Exhibits A-1 through A-12 (ECF Nos. 30-2–30-13).  *See* (ECF No. 32.)  In its Reply in Support of its MSJ, HHSC only addressed Quintero's objections to Dominguez's Declaration and did not address Quintero's objections to Exhibits A-1 through A-12.  *See* (ECF No. 35:7.)

### 1. Dominguez's Declaration

First, Quintero argues that the Court should strike Dominguez's Declaration pursuant to Federal Rules of Civil Procedure 26 and 37(c).  (ECF No. 32:2–4.)  Under Federal Rule of Civil Procedure 26, a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," unless otherwise exempted, stipulated, or ordered.  Fed. R. Civ. P. 26(a)(1)(A).  Additionally, a party must "supplement or correct" that disclosure if ordered by the court or "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  If a party fails to comply with Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  "To determine whether a failure to disclose was harmless, the Court evaluates four factors: (1) the explanation for the failure to disclose; (2) the importance of the information; (3) potential prejudice to the opposing party of including the evidence; and (4) the availability of a continuance to cure such prejudice."  *Hovanec v. Miller*, 331 F.R.D. 624, 637 (W.D. Tex. 2019) (citing *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009)).  The nondisclosing party bears the burden of proving substantial justification or harmlessness.  *Id.*

Quintero argues that HHSC failed to disclose Dominguez's "identity" or contact information "as an individual likely to have discoverable information."  (ECF No. 32:1–2.) Quintero also argues that HHSC withheld Dominguez's Declaration until after the discovery

period closed, thus denying her the opportunity to cross-examine Dominguez by deposition.  (*Id.* at 3–4.)

HHSC states that it did not withhold Dominguez's Declaration because it was not executed until May 18, 2022.[3]  (ECF No. 35:7.)  While HHSC admits that its prior counsel "forgot to serve" its Initial Disclosures, HHSC argues that Quintero is not prejudiced by its use of Dominguez's Declaration because Quintero "specifically identified Dominguez as a relevant witness repeatedly throughout her Complaint" and HHSC "identified [Dominguez] as a relevant witness in response to both Plaintiff's Interrogatories #1 and #2." (*Id.*)  As evidence, HHSC provides excerpts of those discovery responses, which were served on February 8, 2021.  (ECF No. 35-1:4.)  The responses show that HHSC provided Dominguez's name, title, and employer, with an explanation that she could provide information as to "Plaintiff's work while employed with Defendant" and "Defendant's employment decisions regarding hiring, firing, leave, discipline, and employment benefits." (*Id.* at 2.)  HHSC declined to provide Dominguez's personal address and phone number pursuant to Texas Government Code § 552.117.  (*Id.* at 2–3.)  Instead, HHSC provided the contact information of its attorney of record, who at the time was Daniel Abrahamson.  (*Id.*)

In reply, Quintero argues that HHSC is not permitted to direct communications with Dominguez through its attorney.  (ECF No. 37:1–3.)  Quintero reiterates that she is prejudiced by HHSC's failure to disclose Dominguez's address, phone number, or the subject matter of Dominguez's testimony, because this prevented Quintero from cross-examining Dominguez, conducting a background check to prepare rebuttal testimony, or identifying rebuttal witnesses. (*Id.* at 4–6.)  She further argues that HHSC's Initial Disclosures were untimely and improper given

---

[3] HHSC clarifies that the May 18, 2021, date in the Dominguez Deposition is a typo and should state May 18, 2022. (ECF No. 35:7 n.2.)

the April 15, 2022 discovery deadline, and the June 30, 2021 end of Dominguez's employment with HHSC.  (*Id.* at 3–4.)

Here, the Court finds that on or about February 8, 2021, HHSC disclosed Dominguez's identity and the subject matter of the information available to her.  *See* (ECF No. 35-1:2, 4.)  As for HHSC's failure to disclose Dominguez's personal address or telephone number, the Court finds such failure to be harmless.  *See Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338, 346 (N.D. Tex. 2004).  HHSC explained its reason for withholding Dominguez's personal information and provided an alternative avenue for communication.  *See* (ECF No. 35-1:2–3.)  In her Complaint, Quintero acknowledged the importance of Dominguez's role in this matter.  *See* (ECF No. 1:2–4.)  Further, Quintero has not indicated any failed attempts on her part to contact Dominguez.  Nor has she sought a continuance to cure any alleged prejudice.  Therefore, the Court overrules Quintero's objections regarding Dominguez's Declaration and will consider Dominguez's Declaration for purposes of this Report and Recommendation.

### 2.  Exhibits A-1 Through A-12

Quintero also argues that Exhibits A-1 through A-12, attached to Dominguez's Declaration, should be stricken because they contain hearsay and would be unauthenticated without Dominguez's Declaration.  (ECF No. 32:2, 4–5) (citing Federal Rules of Evidence 801, 802, and 901).  Since the Court will consider Dominguez's Declaration, authentication of the attachments is not an issue.  However, since HHSC did not address Quintero's hearsay objections, the Court finds that HHSC has not met its burden of proving the admissibility of the attachments.  *See* (ECF No. 35:7); Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment.  The Court will not evaluate the admissibility of HHSC's Exhibits A-1 through A-12, but will not

consider them for purposes of this Report and Recommendation.  *See Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013).

## B.  Title VII Claims

Quintero alleges that HHSC violated Title VII of the Civil Rights Act of 1964.  (ECF No. 1:5.)  Title VII prohibits discrimination by an employer on the basis of an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  Under the Pregnancy Discrimination Act, "Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015); *see* 42 U.S.C. § 2000e(k) ("[W]omen affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .").  Additionally, a hostile or abusive work environment claim is actionable under Title VII.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67, 73 (1986).  Title VII also prohibits an employer from retaliating against an employee for engaging in a Title VII protected activity.  *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016); *see* 42 U.S.C. § 2000e-3(a).

HHSC seeks summary judgment on all of Quintero's Title VII claims.  The Court will consider each of Quintero's Title VII claims in turn.[4]

### 1.  Title VII Discrimination Claim

### i.  Quintero's Prima Facie Case

HHSC first argues that it is entitled to summary judgment on Quintero's discrimination claims.  (ECF No. 30:14–20.)  To prevail on a Title VII discrimination claim based on circumstantial evidence, a plaintiff must first establish a prima facie case of discrimination.  *See*

---

[4] On July 1, 2022, Judge Montalvo dismissed Quintero's claim for Title VII punitive damages.  (ECF No. 38.)  Therefore, the Court's analysis applies only to Quintero's remaining Title VII claims.

*Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir. 2016).[5]  To establish a prima facie discrimination claim, a plaintiff must show that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

Quintero presents evidence that she meets the first and second prima facie elements. Specifically, she demonstrates that she is a woman and was pregnant, and that she was qualified for the Pharmacy Technician position.  *See* (ECF No. 41:7); *see, e.g.*, *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235–36 (5th Cir. 2016).  HHSC does not dispute this evidence.  *See* (ECF No. 30:7.)  The parties only dispute whether Quintero has established the third and fourth prima facie elements of a discrimination claim.  *See* (ECF Nos. 30:14–17; 35:1–3; 41:7.)  With respect to Quintero's sex discrimination claim, HHSC argues that Quintero cannot meet the fourth prima facie element because HHSC hired a woman to replace Quintero, and thus, she was not replaced by someone outside of the protected group of "women."  *See* (ECF Nos. 30:14; 30-1:4.) Quintero does not refute this in her Response.  *See* (ECF No. 41.)  But in her Sur-Reply, Quintero acknowledges that pregnancy discrimination is a form of sex discrimination, and she argues that HHSC's arguments about her sex discrimination claim are merely attempts to undermine her pregnancy discrimination claim.  (ECF No. 43:3–4.)

To the extent that Quintero intended to make a claim of sex discrimination distinctly from her pregnancy discrimination claim, the Court finds that HHSC has shown, without genuine

---

[5] The standards of proof for Title VII claims differ depending on whether the plaintiff presents direct or circumstantial evidence.  *See Fairchild*, 815 F.3d at 966–67.  Here, both parties evaluate Quintero's claims under the framework for circumstantial evidence, so the Court applies that standard.  *See* (ECF Nos. 30:13–14; 41:6–7); *Hernandez v. Clearwater Transp., Ltd.*, 550 F. Supp. 3d 405, 416 (W.D. Tex. 2021) (analyzing pregnancy discrimination claims under the circumstantial evidence framework where plaintiff did not claim that she had direct evidence).

dispute, that Quintero fails to establish the fourth element of a prima facie case.  *See* (ECF Nos. 30:14; 30-1:4; 41.)  Therefore, the Court recommends granting HHSC's Motion with respect to any sex discrimination claim that is distinguishable from Quintero's pregnancy discrimination claim.  The Court now proceeds to separately evaluate Quintero's pregnancy discrimination claim.

Regarding Quintero's pregnancy discrimination claim, HHSC seems to frame its arguments only as Quintero's failure to show an adverse employment action aside from her termination.  *See* (ECF No. 30:15–17.)  However, HHSC concedes that Quintero's employment was terminated.  *Id.*  Employment termination is an adverse employment action.  *McCoy*, 492 F.3d at 556.  Thus, the Court finds that Quintero meets the third prima facie element for her pregnancy discrimination claim.[6]

Quintero argues that one reason for which she meets the fourth prima facie element is that HHSC replaced her with someone who is outside of the protected class because her replacement, Katherine Hunter, "cannot get pregnant because she suffers from unexplained infertility."  (ECF No. 41:17) (citing ECF Nos. 41-4:4; 41-5:41).  Such evidence is sufficient to meet the fourth prima facie element.  *See Heinsohn*, 832 F.3d at 235–36.  HHSC concedes that it hired Hunter as Quintero's replacement and does not present evidence to dispute that Hunter is outside of the protected class.  *See* (ECF No. 30:12, 19–20.)  In fact, attached to HHSC's Motion is the same excerpt from Hunter's deposition that is also cited by Quintero, in which Hunter explains her infertility and Dominguez's awareness of her infertility.  (ECF No. 30-16:10.)  Therefore, the Court finds that Quintero presents a prima facie case of pregnancy discrimination.

---

[6] HHSC also argues that other actions alleged by Quintero are not adverse employment actions.  (ECF No. 30:15–17.)  Quintero does not respond to this contention, but rather emphasizes that the parties agree on the issue of termination. (ECF No. 41:7.)  Therefore, the Court will assess Quintero's discrimination claim only as it pertains to her termination. *See McCoy*, 492 F.3d at 559 (holding that for Title VII discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" (alteration in original) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002))).

### ii.  HHSC's Legitimate, Nondiscriminatory Reason for Termination

If a plaintiff succeeds in making a prima facie discrimination case, then the burden shifts to the defendant to present a "legitimate, nondiscriminatory reason" for its actions.  *Fairchild*, 815 F.3d at 967 (quoting *Young*, 575 U.S. at 213); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  This burden "is one of production—not persuasion."  *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("The defendant's burden during this second step is satisfied by producing evidence, which, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993))).

Here, HHSC states that it terminated Quintero for a legitimate, nondiscriminatory reason: Quintero's general insubordination.  (ECF No. 30:17–18.)  Courts have regularly found an employee's insubordination to be a legitimate and nondiscriminatory reason for employment termination.  *See, e.g.*, *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 416 & n.23 (5th Cir. 2007); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).

HHSC cites to Dominguez's Declaration as evidence that it terminated her because of her insubordination.  (ECF No. 30:17–18.)  Dominguez states in her Declaration that Quintero "did not follow directions," "had to be asked . . . multiple times to complete her tasks," and would sometimes "los[e] her temper at being told to perform her job duties."  (ECF No. 30-1:2–3.)  Dominguez explains that she "counseled" Quintero that "if [she] did not want to be told repeatedly to perform her job duties, she should perform those duties when instructed to do so rather than waiting until her own preferred times."  (*Id.* at 3.)

12

As an example, Dominguez describes one instance when Quintero refused to take medications upstairs when a nurse requested them for a patient. (*Id.* at 3.) Dominguez describes another instance when, after Quintero "noted an irregularity" during a "Medication Room Inspection," Dominguez "instructed her to return to the unit and speak with the Charge Nurse to identify the nurse on shift at the time of the irregularity." (*Id.*) "Ms. Quintero was then to speak with that nurse to determine whether and how the medication irregularity had been addressed." (*Id.*) Instead, Quintero spoke with the "Nurse Supervisor, who said the irregularity would be 'taken care of.'" (*Id.* at 3–4.) Dominguez explained to Quintero that she had not followed instructions because she spoke to the wrong person and did not "determine specifically whether and how the irregularity had been addressed." (*Id.* at 4.) Additionally, Dominguez describes an instance when Quintero failed to prepare for an assigned presentation because she had forgotten about it. (*Id.*) Ultimately, Dominguez explains, HHSC terminated Quintero because her "refusals to perform her job duties when asked, her angry reactions when asked to perform her job duties, her complaining about being told to perform her job duties, and her unexplained failure to perform her job duties made her unsuited for her position as an HHSC Pharmacy Technician." (*Id.*)

HHSC also cites to Quintero's Deposition as evidence of her insubordination. (ECF No. 30:17–18.) Specifically, HHSC notes that Quintero acknowledged her job responsibilities to include medication management, conducting medication room inspections, and otherwise completing tasks as instructed by her supervisor. (ECF No. 30-14:3–5.) HHSC points to examples of Quintero admitting to not following her supervisor's instructions and forgetting about her assigned presentation. (*Id.* at 16–21, 45–46.)

Based on the foregoing, the Court finds that HHSC has met its burden of production and clearly identified a nondiscriminatory reason for terminating Quintero's employment. *See Watkins*, 997 F.3d at 282.

### iii.  Quintero's Evidence of Pretext

If a defendant establishes a legitimate, nondiscriminatory reason for the adverse employment action, then the burden shifts back to the plaintiff to establish that such reasoning is a mere pretext for discrimination. *Fairchild*, 815 F.3d at 967. This burden is not just one of production, but also persuasion. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001). A plaintiff must provide substantial evidence to raise a genuine issue of fact regarding pretext. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001). A plaintiff must do so by either showing that the defendant's nondiscriminatory explanations are "false or 'unworthy of credence,'" or by presenting evidence of disparate treatment. *Hernandez v. Clearwater Transp., Ltd.*, 550 F. Supp. 3d 405, 417 (W.D. Tex. 2021) (quoting *Wallace*, 271 F.3d at 220); *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).[7]

To evaluate a claim of pretext, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000)). Ultimately, "evidence must be of sufficient 'nature, extent, and quality' to permit a

---

[7] Alternatively, under the "mixed-motive" approach, a plaintiff may argue that even though the defendant's nondiscriminatory reason is true, the plaintiff's protected characteristic was an additional motivating factor for the adverse employment action. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). The Court will not apply this approach here because neither party does so, and Quintero challenges the authenticity of HHSC's stated motivations altogether. *See* (ECF Nos. 30:18–20; 41:6–18.)

jury to reasonably infer discrimination." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (quoting *Crawford*, 234 F.3d at 903).

As a preliminary matter, the Court notes that Quintero's Response does not clearly frame her arguments for the discrimination claim as pertaining to "pretext." *See* (ECF No. 41:7) (identifying arguments as pertaining to the fourth prima facie element). However, the Court finds that in substance many of those arguments pertain to pretext. *See* (*id.* at 7–17.) Therefore, the Court considers those arguments, as well as Quintero's pretext arguments for the retaliation claim, to determine whether there is substantial evidence for a jury to reasonably infer discrimination. *See* (*id.* at 29.)

### a) Challenge to the Truth or Credence of HHSC's Nondiscriminatory Reasoning

Quintero argues that HHSC's proffered reasons for terminating her are false or unworthy of credence.[8]  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Quintero argues that "Superintendent Carrillo and Supervisor Dominguez refused to give [her] a reason for her termination at the time of her firing." (ECF No. 41:22) (citing ECF No. 41-1:162, 277). However, Quintero also acknowledges that she received a termination letter (*id.* at 23), which stated that her termination was "due to a determination that [she was] not suited for [her] assigned position and for [her] failure to follow directions/insubordination" (ECF No. 41-6:2). Quintero argues that the explanation is "vague" and "non-specific" so as to raise a genuine issue regarding the true reason for her termination. (ECF No. 41:23.) Similarly, Quintero argues there is a genuine dispute about her termination because "there is a dearth of any evidence

---

[8] HHSC's Motion argues that Quintero cannot show pretext as to her discrimination claim, although those arguments focus on the disparate treatment issue rather than the truth or credence issue. *See* (ECF No. 30:18–20.)  Thus, the Court will address those arguments in the next subsection.

whatsoever of any disciplinary write-ups or other corrective actions" by HHSC for her alleged insubordination.  (*Id.* at 23–24.)  *But see* (ECF No. 30:9) (citing ECF No. 30-1:3) (stating that "Dominguez provided Plaintiff with Employee Development Notes, which were conversations where Ms. Dominguez counseled Plaintiff" regarding issues of following instructions).  The Court considers these evidentiary disputes alongside Quintero's additional arguments.  *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 396 (5th Cir. 2013) (considering "vague and nondescript" explanations with other evidence); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 639 (5th Cir. 2011) (considering employer's lack of documentation with other evidence "as a whole").

Quintero also disputes the facts presented by HHSC regarding her alleged subordination.  (ECF No. 41:12, 25–29.)  Regarding the alleged incident where Quintero failed to retrieve a medication as requested by Dominguez, Quintero instead alleges that Dominguez only asked her to retrieve the medication once and Quintero did as instructed.  (*Id.* at 25–26) (citing ECF No. 41-1:148–51.  However, it is not clear whether Quintero and HHSC speak of the same incident.

Regarding the Medication Room Inspection, Quintero acknowledges that even after learning that Dominguez wanted Quintero to speak with the nurse on duty rather than just the supervising nurse, Quintero did not follow that instruction.  (*Id.* at 27); (ECF No. 41-1:136–39.)  Regarding the assigned presentation, Quintero admits to forgetting about the presentation, but argues that it cannot be a true reason for her termination because Dominguez allowed her to reschedule the presentation to a later date and did not issue a disciplinary notice on the matter.  (ECF Nos. 41:27–28; 41-1:69–70, 73.)  However, Quintero does not state how this shows the falsity of HHSC's reason for terminating her.

In general, Quintero argues that HHSC's proffered reason for her termination is false because "Dominguez is aware [that] Employee Quintero does what she is told" and that

Dominguez "does not need to tell Employee Quintero to do something more than once." (ECF No. 41:12) (citing ECF No. 41-1:133–35). Rather, Quintero claims that Dominguez never had to ask her to do something more than once because Dominguez "would change what she asked me to do." (ECF No. 41-1:135.) Quintero does not provide evidence to support these conclusory statements.

Considering the foregoing pretext arguments, the Court finds that Quintero's proffered evidence is not sufficiently probative of a lack of truth or credence as to HHSC's reason for terminating Quintero. *See, e.g.*, *Collier v. Dall. Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 & n.5 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2657 (2021); *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 869 (5th Cir. 2010) (citing *Laxton*, 333 F.3d at 579) ("At the pretext stage, the proper inquiry is whether [the employer's] perception of [the employee's] performance, whether accurate or not, was the reason for her discharge."). Ultimately, the Court finds there is no genuine dispute that Quintero fails to show that HHSC's proffered reason for terminating her lacks truth or credence.

### b) Evidence of Disparate Treatment

Quintero also argues that HHSC's explanation for terminating her is pretext because HHSC subjected her to disparate treatment. To show disparate treatment, a plaintiff must show that the defendant treated another employee preferentially in circumstances that are "nearly identical" to those which gave rise to the adverse employment action at issue. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Essentially, the plaintiff must show that "the misconduct for which she was discharged was nearly identical to that engaged in by . . . [another] employee whom [the employer] retained." *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982); *see, e.g.*, *White v. Denton Cnty.*, 655 F. App'x 1021, 1025–26 (5th Cir. 2016) (per curiam).

17

As evidence of disparate treatment, Quintero refers to her own Deposition, Hunter's Deposition and Declaration, and Pharmacy Technician Teshandell Truehill's Deposition and Declaration. *See* (ECF No. 41:8–16.)[9]  However, neither Quintero's Response nor the proffered evidence identifies another employee who engaged in the same insubordinate conduct that HHSC references as its reason for terminating Quintero. *See* (*id.*); (ECF Nos. 41-1–41-5.)  Thus, there is no genuine dispute that Quintero fails to show pretext in the form of disparate treatment.

In sum, considering Quintero's prima facie case and her proffered evidence of pretext, the Court finds that the evidence is not sufficient to lead a jury to reasonably conclude that HHSC terminated Quintero for discriminatory reasons. *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405–06 (5th Cir. 1999); *Hervey*, 404 F. App'x at 868–69.  Thus, the Court finds there is no genuine issue of material fact as to Quintero's Title VII discrimination claim and the claim fails as a matter of law.  Therefore, the Court recommends granting HHSC's Motion as to Quintero's Title VII discrimination claim.

### 2.  Title VII Retaliation Claim

Additionally, HHSC argues that it is entitled to summary judgment on Quintero's retaliation claim.  (ECF No. 30:22–25.)  As with Title VII discrimination claims, a plaintiff must first establish a prima facie case of Title VII retaliation.  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  To establish a prima facie retaliation claim, a plaintiff must show that: (1) she "engaged in activity protected by Title VII;" (2) "an adverse employment action occurred;" and (3) "a causal link existed between the protected activity and the adverse action."  *Id.* (internal

---

[9] Quintero refers to a statement by Hunter that "Dominguez had a negative attitude toward Vanessa Quintero because 'if she had known she was pregnant when she interviewed, [Dominguez] would never have hired her.'"  (ECF No. 41-4:2); *see* (ECF No. 41:8).  However, Hunter states that she did not hear Dominguez make such a statement, but that she heard it relayed from co-workers.  (ECF Nos. 41-4:2; 41-5:39–40); *see* (ECF No. 41-3:32–33, 42–43.)  The Court finds that this statement is inadmissible hearsay and therefore will not consider it.  *See* Fed. R. Evid. 801–803.

quotation marks omitted) (quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

As previously discussed, the parties agree that HHSC terminated Quintero's employment. *See* (ECF Nos. 30:24; 41:20.)  Termination is an adverse employment action for a retaliation claim. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022).[10]  However, the parties dispute whether Quintero engaged in a protected activity, and if so, whether she can show a causal connection between that activity and HHSC's termination of her employment.  (ECF Nos. 30:24–25; 41:18–20.)

A Title VII protected activity may be either a demonstrated opposition to a practice made unlawful by Title VII, or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in a[] [Title VII] investigation, proceeding, or hearing."  42 U.S.C. § 2000e–3(a); *Rite Way*, 819 F.3d at 239.

HHSC argues that Quintero cannot demonstrate that she participated in a protected activity because she did not make a charge or participate in a Title VII investigation or hearing and because her April 22 complaint did not raise issues of discrimination.  (ECF No. 30:24–25.)  Quintero responds that she engaged in protected activity "by reporting her pregnancy . . . and complaining about Supervisor Dominguez['s] discriminatory actions."  (ECF No. 41:19.)  HHSC replies that reporting a pregnancy is not a protected activity because it is not a form of "opposition" to an illegal practice.  (ECF No. 35:6) (citing *Ackel*, 339 F.3d at 385).

---

[10] HHSC argues that Quintero failed to show "that any disciplinary action other than termination was an adverse employment action."  (ECF No. 30:24.)  Quintero does not respond to this contention, but rather emphasizes that the parties agree on the issue of termination, which is an adverse employment action.  (ECF No. 41:20.)  As was done for Quintero's discrimination claim, the Court will assess Quintero's retaliation claim with termination as the only adverse employment action.  *See supra* note 6.

The Court finds that Quintero has not raised sufficient facts to show that she engaged in a protected activity. Quintero's disclosing her pregnancy, without more, is not a protected activity for purposes of her Title VII retaliation claim. *See* 42 U.S.C. § 2000e–3(a); *Rite Way*, 819 F.3d at 239. Even though Quintero states in her deposition that "[Dominguez's] attitude towards [Quintero] changed after [Quintero] told her that [she] was pregnant," (ECF No. 41-1:121–22), she does not indicate that she mentioned her pregnancy or a Title VII prohibited action when she complained about Dominguez on April 22. *See* (ECF Nos. 41:19–20; 41-1:121–22, 146–52, 277–78.) Therefore, the Court finds that there is no genuine issue that Quintero did not engage in a protected activity. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (collecting cases and noting that "[w]e have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity"); *Wright v. Chevron Phillips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018). Without a protected activity, Quintero fails to make a prima facie retaliation claim. Thus, the Court finds that there is no genuine issue of material fact regarding Quintero's retaliation claim and such claim fails as a matter of law. Therefore, the Court recommends granting HHSC's Motion with respect to Quintero's retaliation claim.

### 3.   Title VII Hostile Work Environment Claim

Finally, HHSC argues that Quintero cannot establish a "hostile work environment" claim. (ECF No. 30:20–22.) From the face of Quintero's Complaint, it is unclear whether she intended to bring such a claim. *See* (ECF No. 1.) However, since it is raised in HHSC's Motion and Quintero's Response, the Court will consider whether HHSC is entitled to summary judgment on a hostile work environment claim to the extent that Quintero raised such a claim. *See* (ECF Nos. 30:20–22; 41:29–31.)

To establish a Title VII hostile work environment claim,

the plaintiff must prove that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected group status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Pfau v. Mnuchin*, No. 1:18-CV-422-RP, 2019 WL 2124673, at *3 (W.D. Tex. May 15, 2019) (citing *Williams-Boldwar v. Denton Cnty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014)).  An abusive environment might not "seriously affect employees' psychological well-being" but can still "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Courts consider the following factors for a hostile work environment claim: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.  "Although '[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive' to support evidence of a Title VII violation, 'simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347–48 (5th Cir. 2007) (citations omitted) (first quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995); then quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)).

As previously discussed, the parties do not dispute that Quintero, as a pregnant woman, was a member of a protected class.  (ECF Nos. 30:7; 41:30.)  HHSC argues that Quintero "cannot show she was subjected to unwelcome harassment, that any such harassment was based on her

gender or pregnancy, or that any such harassment affected a term, condition, or privilege of her employment." (ECF No. 30:21.)

In response, Quintero alleges that Dominguez harassed her "for being pregnant" by yelling at her, changing her shifts "at the last minute" and without notice, "falsely accusing [her] of being inflexible and argumentative, and falsely accusing [her] of not following instructions." (ECF No. 41:30.) However, to the extent that any such actions can be considered harassment, the record does not show that they were based on Quintero's status as a pregnant woman or that they affected a term, condition, or privilege of her employment. *See* (ECF Nos. 41-1:43–45, 79–160; 41-3:24–40; 41-4:2–3); *see, e.g.*, *Yong Dong Wang v. Univ. of Tex. at El Paso*, No. EP-17-CV-00209-DCG, 2018 WL 2271382, at *5 (W.D. Tex. May 16, 2018) (finding no genuine issue of material fact on a hostile work environment claim where plaintiff only posited "unsubstantiated accusations and conclusory allegations" that the alleged harassment occurred because of his protected status).

The Court notes that one statement attributed to Dominguez could be considered harassment based on Quintero's protected status. In Hunter's Declaration, Hunter states that she "witnessed Patty Dominguez comment out loud about Vanessa Quintero that 'she was moving slow today' due to her pregnancy." (ECF No. 41-4:2.) However, the record does not indicate that Quintero herself heard that statement or that it affected a term, condition, or privilege of her employment. (*Id.*; ECF No. 41:12.)

For the foregoing reasons, the Court finds that there is no genuine issue of material fact regarding Quintero's hostile work environment claim and such claim fails as a matter of law. Therefore, the Court recommends granting HHSC's Motion as to the hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that "Defendant Texas Health and Human Services Commission's Motion for Summary Judgment" (ECF No. 30) be **GRANTED**.

**SIGNED** this 25th day of August, 2022.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**